**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOSHUA DELLER, individually and on behalf of all others similarly situated,<br><br>    Plaintiff<br><br>v.<br><br>DREXEL UNIVERSITY,<br><br>    Defendant. | Civil Action No. 2:23-cv-03746 |

**DEFENDANT DREXEL UNIVERSITY'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1

II.   FACTUAL BACKGROUND ......................................................................................... 2
      A.    COVID-19 and Drexel's Transition to Remote Learning ..................................... 2
      B.    Plaintiff Signs a Student Financial Responsibility Agreement for the
            Spring 2020 Quarter, Which Provided Him With the Right to a Full
            Refund Through the First Week of Classes .......................................................... 6
      C.    With Full Knowledge that the Quarter Would be Held Remotely, Plaintiff
            Pays Tuition, Enrolls in the Spring Quarter, and Does Not Exercise
            Drexel's Refund Policy ....................................................................................... 6
      D.    Procedural Background ......................................................................................... 7

III.  STANDARD OF REVIEW ........................................................................................... 8

IV.   ARGUMENT ................................................................................................................. 8
      A.    Plaintiff's Breach of Implied Contract Claim (Count One) Fails as a
            Matter of Law ....................................................................................................... 8
            1.    Drexel Promised to Provide Remote, Not In-Person, Instruction
                  During the Spring 2020 Quarter ................................................................. 9
            2.    No Reasonable Jury Could Find that Drexel Promised, at the Time
                  Plaintiff First Enrolled, to Provide In-Person Instruction in
                  Perpetuity ................................................................................................. 12
            3.    Because Drexel Operates on a Quarter System, Plaintiff's Claims
                  are Materially Different from *Hickey* and Other Cases That
                  Allowed Tuition-Refund Claims to Proceed ............................................ 16
      B.    Plaintiff's Unjust Enrichment Claim (Count Two) Fails as a Matter of Law ....... 18

VI.   CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bradshaw v. Pa. State Univ.*,
No. CV 10-4839, 2011 WL 1288681 (E.D. Pa. Apr. 5, 2011) ...................................................8

*David v. Neumann Univ.*,
177 F. Supp. 3d 920 (E.D. Pa. 2016) ......................................................................................19

*Elias v. Elias*,
237 A.2d 215 (Pa. 1968) .........................................................................................................9

*Gociman v. Loyola Univ. of Chi.*,
41 F.4th 873 (7th Cir. 2022) ...................................................................................................17

*Hernandez v. Ill. Inst. of Tech.*,
63 F.4th 661 (7th Cir. 2023) ...................................................................................................17

*Hickey v. Univ. of Pittsburgh*,
81 F.4th 301 (3d Cir. 2023) .....................................................................................................16

*Hogan v. S. Methodist Univ.*,
74 F.4th 371 (5th Cir. 2023) ...................................................................................................17

*Liss & Marion, P.C. v. Recordex Acquisition Corp.*,
983 A.2d 652 (Pa. 2009) .........................................................................................................9

*Lombardo v. Gasparini Excavating Co.*,
123 A.2d 663 (Pa. 1956) .....................................................................................................9, 14

*Longenecker-Wells v. Benecard Servs. Inc.*,
658 F. App'x 659 (3d Cir. 2016) .........................................................................................8, 10

*Minjarez-Almeida v. Kan. Bd. Of Regents*,
527 P.3d 931 (Kan. Ct. App. 2023) ........................................................................................17

*Mountain Props., Inc. v. Tyler Hill Realty Corp.*,
767 A.2d 1096 (Pa. Super. Ct. 2001)......................................................................................9

*Oyoque v. DePaul Univ.*,
520 F. Supp. 3d 1058 (N.D. Ill. 2021) ....................................................................................16

*Polley v. Nw. Univ.*,
560 F. Supp. 3d 1197 (N.D. Ill. 2021) .................................................................................16–17

*Porreco v. Maleno Devs., Inc.*,
    761 A.2d 629 (Pa. Commw. Ct. 2000) ...............................................................10, 14

*Reardon v. Allegheny Coll.*,
    926 A.2d 477 (Pa. Super. Ct. 2007)...........................................................................8

*Rynasko v. N.Y. Univ.*,
    63 F.4th 186 (2d Cir. 2023) ....................................................................................17

*Schenck v. K.E. David, Ltd*,
    666 A.2d 327 (Pa. Super. Ct. 1995)........................................................................18

*Shaffer v. George Washington Univ.*,
    27 F.4th 754 (D.C. Cir. 2022)..................................................................................17

*Swartley v. Hoffner*,
    734 A.2d 915 (Pa. Super. Ct. 1999).........................................................................8

*Jones v. Administrators of Tulane Educational Fund*,
    51 F.4th 101 (5th Cir. 2022) ...................................................................................17

*Universal Atl. Sys., Inc. v. Honeywell Int'l, Inc.*,
    388 F. Supp. 3d 417 (E.D. Pa. 2019) ...............................................................9–10, 14

*Walter v. Magee-Womens Hosp. of UPMC Health Sys.*,
    876 A.2d 400 (Pa. Super. Ct. 2005).........................................................................18

## I.  INTRODUCTION

In March 2020, the world changed.  COVID-19 had arrived in the Northeast United States and was spreading like wildfire.  To combat the pandemic, governments sprang into action, closing all non-essential businesses and restricting individuals from leaving their homes except for essentials.  Universities were one of the many affected industries.  To comply with government mandates and protect their students, universities, including Defendant Drexel University, pivoted to remote learning in an online environment so as to continue to provide their students with an education.

Drexel, unlike most schools, runs its undergraduate programs on a quarter calendar, rather than on a semester basis.  So, when Drexel made the pivot to online instruction, it did so at the end of its Winter Quarter.  At least three weeks before the Spring 2020 Quarter began, Drexel notified students that the Quarter would be taught remotely.  Students thus had a choice:  They could choose not to enroll in the Spring Quarter; they could enroll but withdraw for a full refund if they did not wish to attend classes remotely; or they could register for classes, pay tuition, receive remote education as Drexel informed them they would, and earn credits toward their degrees.

Plaintiff Joshua Deller signed a written agreement with Drexel acknowledging that he had this choice.  It said he was obligated to pay tuition for the Spring term if he attended classes, but also clearly told him that he had the right to not attend and/or to seek a 100% refund through the first week of classes if he changed his mind.  Deller chose to enroll, did not withdraw for a refund, and thus earned credits he used to ultimately graduate with his degree from Drexel.  Indeed, Deller affirmatively confirmed his intent to attend the Spring Quarter and paid his tuition *after* he was informed that classes would be held remotely.  He never sought to exercise his right to a refund, notwithstanding that he had the opportunity to try online learning for a week and still withdraw if he did not like it.  Instead, he brings this lawsuit, three years later, claiming that he should be entitled to a refund for receiving exactly what he was told he would receive, all while apparently intending to keep the credits he earned that allowed him to receive a degree from Drexel.

The Court should grant summary judgment in favor of Drexel.  There could be no contract for in-person instruction for the Spring 2020 Quarter at Drexel because Plaintiff and other students were repeatedly told that the quarter would be held remotely, not in person.  Thus, even if a contract can be created by announcements and other information published by the University, the contract that was offered for the Spring 2020 Quarter was for remote learning.  Indeed, any contract for in-person instruction at that time would have been illegal due to government shut down orders.

The *actual* written contract that Plaintiff signed also clearly informed him that, if he wanted a refund, he had to follow the refund policy, which gave him the right to a 100% refund through the first week of the quarter.  He did not do so.  The agreement Plaintiff signed also makes clear that the obligation to pay tuition in exchange for classes is on a quarter-by-quarter basis.  Plaintiff was clearly apprised of what he was getting (remote learning) and what it cost (regular rates for tuition and fees) and decided to proceed with accepting what Drexel was offering.  Under the facts of this case, he cannot establish a breach of contract or unjust enrichment, and the Court should grant summary judgment in favor of Drexel.

## II.    FACTUAL BACKGROUND[1]

### A.    COVID-19 and Drexel's Transition to Remote Learning

Drexel University is a private research university located in Philadelphia, Pennsylvania. *See* Am. Compl., ECF 13, ¶ 19.  Unlike most colleges and universities, most of Drexel's programs operate on a quarter system, rather than a semester system.  *See, e.g.*, *id.* at ¶¶ 4, 5, 33.  As Drexel's Winter Quarter was coming to an end in March 2020, COVID-19 arrived in the Northeast United States.  *Id.* at ¶ 6.  By that time, winter classes at Drexel had largely concluded and only final exams remained.  *See id.* at ¶ 27.[2]  To address the public health emergency, on March 11, 2020,

---

[1] Factual assertions in this statement are supported by Drexel's contemporaneously filed Statement of Uncontested Facts, along with declarations supporting the cited evidence.

[2] *See also* Seward Decl., Ex. 3, *Quarter Calendar 2019-2020—Office of the Provost*, Drexel University, https://drexel.edu/provost/policies-calendars/academic-calendars/quarter-2019-2020/ (last visited Mar. 7, 2024) (cited at Am. Compl., ECF 13, ¶ 27 n.4).

Drexel informed its community that, "[a]fter consultation with deans and other academic leaders," Winter Quarter final exams would be held online instead of in classrooms.[3] Drexel's decision to move final exams online was "consistent with the Centers for Disease Control and Prevention (CDC) and the Philadelphia Department of Public Health."[4]

The next day, March 12, Drexel announced that it would extend Spring break by one week. *See* Am. Compl., ECF 13, ¶ 18 ("The term start was delayed until April 6, 2020.").[5] Drexel also announced at that time that, when the Spring Quarter was to begin on April 6, "courses will be taught remotely using web, video and teleconferencing tools . . . ."[6] As the crisis continued to mount, and to protect the safety of its community, Drexel announced on March 16 that the Spring Quarter would be taught entirely online. *See* Am. Compl., ECF 13, ¶ 49.[7] Drexel told the community about the move to remote instruction three weeks before the commencement of the Spring Quarter.[8]

---

[3] Seward Decl., Ex. 5, *Final Exams Move Online Next Week as Coronavirus Precaution*, Drexel University (Mar. 11, 2020), https://drexel.edu/news/archive/2020/March/Final-Exams-Move-Online-Next-Week-as-Coronavirus-Precaution.

[4] *Id.*

[5] *See also* Seward Decl., Ex. 6, *Spring Break Lengthened, Online Courses for Start of Spring Quarter, Campus to Remain Open*, Drexel University (Mar. 12, 2020), https://drexel.edu/now/archive/2020/March/COVID-19-message-to-community-spring-break-lengthened-online-courses-campus-open/.

[6] *Id.*

[7] *See also* Seward Decl., Ex. 7, *Entire Spring Term to be Taught Remotely; Clinical Experiences Suspended; On-Campus Research Activities Restricted*, Drexel University (Mar. 16, 2020), https://drexel.edu/news/archive/2020/March/Entire-Spring-Term-to-be-Taught-Remotely (cited at Am. Compl., ECF 13, ¶ 49, n.21).

[8] *See* Seward Decl., Ex. 3, *Quarter Calendar 2019-2020—Office of the Provost*, Drexel University, https://drexel.edu/provost/policies-calendars/academic-calendars/quarter-2019-2020/ (last visited Mar. 7, 2024) (cited at Am. Compl., ECF 13, ¶ 27 n.4).

On March 18, Drexel announced that it would close all campus facilities to the public starting March 20.  *See* Am. Compl., ECF 13, ¶ 50.[9]  On March 19, Pennsylvania Governor Tom Wolf ordered all non-life-sustaining businesses within the Commonwealth to close.[10]  Governor Wolf issued a "Stay at Home" order to seven Pennsylvania counties, including Philadelphia County, on March 23.[11]  At this point, Drexel was legally prohibited from holding in-person classes on campus.

To address this rapidly changing situation, Drexel made significant preparations to move classes to a remote environment, keeping its community regularly informed about its progress and plans. Among other things, Drexel announced that it was "ramping up preparations for remote teaching and learning in the spring term" and that Drexel's "Online Learning Council Faculty Fellows . . . began a series of daily webinars aimed at sharpening skill levels in all aspects of remote teaching . . . ."[12]

On March 25, 2020, Drexel sent the community a detailed announcement with additional information about the upcoming Spring Quarter. Drexel told students that "this will be a spring quarter and semester like no other, but our goal is to ensure that it's fundamentally the same in many respects, and in spirit."[13]  Drexel also clearly stated that "normal tuition and fees will apply for the spring 2020 quarter."[14]  The paragraph states, in full:

---

[9] *See also* Seward Decl., Ex. 8, *Campus Prepares for Move-Out, Closure to Public*, Drexel University (Mar. 18, 2020), https://drexel.edu/news/archive/2020/March/campus-prepares-for-move-out-closed-to-public (cited at Am. Compl., ECF 13, ¶ 50 n.24).

[10] *See* Baughman Decl., Ex. 1.

[11] *See* Baughman Decl., Ex. 2.

[12] Seward Decl., Ex. 9, *Drexel Gears Up for Remote Learning, Research; Campus Clearing Out*, Drexel University (Mar. 19, 2020), https://drexel.edu/now/archive/2020/March/drexel-gears-up-for-remote-learning-research-campus-clears-out/.

[13] Seward Decl., Ex. 10, *Drexel's Spring Term: A Rich Offering of Student Experiences*, Drexel University (Mar. 25, 2020), https://drexel.edu/now/archive/2020/March/Campus-update-rich-offering-student-experiences/.

[14] *Id.*

> There will be no charges levied for on-campus housing or meal plans for students working from home or in off-campus residences. However, just as with online courses offered through Drexel University Online, normal tuition and fees will apply for the spring 2020 quarter—less any institutional scholarships and grants, or federal and state aid, which will be credited on student bills. We are working diligently over the extended spring break to develop engaging teaching and learning experiences to enable students to continue their studies. Fees, in turn, support the creation of a rich online learning experience, as well as other forms of digital interaction currently under development.[15]

The next paragraph of the announcement states: "During this challenging time, Drexel will continue to offer several payment options to eligible students. These plans, which can be individualized to cover tuition and fee payments over the span of a term, are detailed on the Drexel Central website."[16] That website (a link to which appears in the March 25 announcement), listed the tuition and fees for the Spring 2020 Quarter.[17] For the Spring 2020 Quarter, tuition was $17,382 for full-time undergraduate students, plus a $790 general fee, while part-time students paid $1,173 per credit. *See* Am. Compl., ECF 13, at ¶ 33. Drexel posted any additional, program-specific fees that may apply. For each program, Drexel posted the precise tuition and fees that would be charged.[18]

Thus, well before the start of the Spring 2020 Quarter, Plaintiff and the entire Drexel Community were clearly told (1) that the campus would be closed and classes would be held remotely and (2) that normal tuition and fees would apply.

---

[15] *Id.*

[16] *Id.*

[17] Seward Decl., Ex. 4; *see also id.* ¶ 7.

[18] *See* Seward Decl., Ex. 4.

**B.    Plaintiff Signs a Student Financial Responsibility Agreement for the Spring 2020 Quarter, Which Provided Him With the Right to a Full Refund Through the First Week of Classes**

Prior to the start of each quarter throughout his matriculation at Drexel, Plaintiff Joshua Deller signed a Student Financial Responsibility Agreement ("SFRA") and agreed that, if he enrolled for that quarter, he would pay the associated tuition and fees.[19]  Plaintiff signed his SFRA for the Spring 2020 Quarter on February 14, 2020.[20]  The SFRA made clear that Plaintiff had the choice to attend or not attend the Quarter, and even after registering for courses he could decide not to attend that Quarter provided "that if I am not planning to attend, it is my responsibility to drop my course(s), as Drexel University will not automatically cancel my registration."[21]

The SFRA refers to and incorporates Drexel's refund policy and provides a link to the text of the policy.[22]  The refund policy provides that students will receive a 100% refund of both tuition and fees if they withdraw before the first day of the quarter or within the first calendar week of the quarter.[23]  In his SFRAs, Plaintiff acknowledged the refund policy and agreed that the policy would set forth "the amount of credit that I may be eligible to receive" in the event of a withdrawal.[24]

**C.    With Full Knowledge that the Quarter Would be Held Remotely, Plaintiff Pays Tuition, Enrolls in the Spring Quarter, and Does Not Exercise Drexel's Refund Policy**

As noted above, Plaintiff was told on March 16, 2020, that the entire Spring 2020 Quarter would be held online.[25]  Plaintiff's account statements show that his tuition and fees were actually

---

[19] *See, e.g.*, Seward Decl., Ex. 13.

[20] Seward Decl., Ex. 12; *see also id.* at ¶ 14 (stating that agreement was electronically signed by Deller as evidenced by the document).

[21] *See* Seward Decl., Ex. 12.

[22] *Id.*

[23] *See* Seward Decl., Ex. 11; *see also id.* ¶ 14;  *Refund Policies and Procedures*, Drexel University, https://drexel.edu/drexelcentral/billing/refunds/policies/ (last visited Mar. 7, 2024).

[24] Seward Decl., Ex. 13.

[25]  *See* Seward Decl., Ex. 7, *Entire Spring Term to be Taught Remotely; Clinical Experiences Suspended; On-Campus Research Activities Restricted*, Drexel University (Mar. 16, 2020),

paid, via a number of different sources, on March 28 and 30, 2020, about two weeks *after* Plaintiff was told that the quarter would be held remotely. *See* Seward Decl., Ex. 14.  Drexel sends students an email before the start of each quarter asking that students to confirm their attendance for the upcoming quarter.[26]  On March 29, 2020, Plaintiff affirmatively confirmed his enrollment in the Spring 2020 Quarter. *See* Seward Decl., Exs. 1, 2.

The Spring 2020 Quarter began—in a remote format—on April 6, 2020. *See* Am. Compl., ECF 13, ¶ 49.  The end of the first week of the quarter was April 11, 2020, *26 days* after Drexel's announcement of the switch to online instruction.  Plaintiff thus had 26 days in which to decide whether to enroll in the Spring 2020 Quarter, including 18 days after he paid to change his mind, *and* a full week of remote instruction that he could try before deciding whether to exercise his right to a full refund and decline to attend the Spring Quarter. He did not request a refund, and instead he paid tuition and fees, attended classes, and earned credits toward his degree during the Spring 2020 Quarter.

### D.    Procedural Background

Plaintiff, on behalf of himself and a putative class, filed this Complaint on September 26, 2023, alleging breach of contract and unjust enrichment.  Defendant filed a Motion to Dismiss on January 12, 2024.  Rather than respond to the Motion, Plaintiff filed an Amended Complaint on January 26, 2024.

The Court held a Rule 16 conference on February 1, 2024.  At the conference, the Court and the parties discussed the legal issues presented in the Motion to Dismiss.  Because there were certain narrow factual issues that the Court arguably could not take notice of on a Motion to Dismiss, Drexel offered to instead file an Answer and a Motion for Summary Judgment.  The Court agreed with that suggestion, and entered an Order dated February 5, 2024, permitting Drexel to

---

https://drexel.edu/news/archive/2020/March/Entire-Spring-Term-to-be-Taught-Remotely   (cited at Am. Compl., ECF 13, ¶ 49, n.21).

[26] *See* Seward Decl., ¶ 3.

file an early summary judgment motion directed to the terms of the alleged contract at issue in Plaintiff's claims.

## III.    STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To survive summary judgment, the non-moving party must identify a material fact that is in genuine dispute. A non-moving party has raised a "genuine" dispute of fact if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id*.

## IV.    ARGUMENT

### A.    Plaintiff's Breach of Implied Contract Claim (Count One) Fails as a Matter of Law

Pennsylvania courts have held that "the relationship between a private educational institution and an enrolled student is contractual in nature." *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999). To establish a claim for breach of contract under Pennsylvania law, Plaintiff must show "1) the existence of a contract and its terms; 2) a breach of the duty imposed by the contract; and 3) damages that resulted." *Bradshaw v. Pa. State Univ.*, No. CV 10-4839, 2011 WL 1288681, at *2 (E.D. Pa. Apr. 5, 2011) (citing *Reardon v. Allegheny Coll.*, 926 A.2d 477, 481 (Pa. Super. Ct. 2007)). In Pennsylvania, "[t]he contract between a private institution and a student is comprised of the written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution." *Swartley*, 734 A.2d at 919. An implied contract "arises in the same manner as an express contract," except that the intention of the parties is inferred from the surrounding circumstances rather than a written document. *Longenecker-Wells v. Benecard Servs. Inc.*, 658 F. App'x 659, 662 (3d Cir. 2016).

In *Hickey v. Univ. of Pittsburgh*, 81 F.4th 301 (3d Cir. 2023), the Third Circuit allowed a tuition refund claim to proceed to discovery under an implied contract theory when the schools—

which were on semester systems—had allegedly promised an "on-campus" experience through advertisements, course catalogs, and a history of offering a classroom-only learning experience. Unlike *Hickey*, Drexel never promised, expressly or implicitly, that the Spring 2020 Quarter would be held in person. To the contrary, it repeatedly told students—in the clearest terms possible— that Spring 2020 Quarter classes would be remote and that the campus would be closed. Therefore, any contract between Drexel and Deller, whether express or implied, was for remote, not in-person, instruction.

### 1. Drexel Promised to Provide Remote, Not In-Person, Instruction During the Spring 2020 Quarter

Plaintiff's breach of contract claim fails as a matter of law because the undisputed evidence establishes that Drexel did not promise, explicitly or implicitly, to provide in-person instruction during the Spring 2020 Quarter. To the contrary, it specifically told students that instruction would be by remote means and that the campus would be closed. Plaintiff accepted what Drexel offered by paying tuition, attending classes, and not seeking the refund to which he was entitled under the written, signed SFRA.

Deller is claiming an implied contract for in-person instruction. "A contract implied in fact is an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from acts in the light of the sur-rounding circumstances." *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 659 (Pa. 2009) (quoting *Elias v. Elias*, 237 A.2d 215, 217 (Pa. 1968)). The plaintiff must still show the existence of "'an enforceable agreement,'" which requires "'a meeting of the minds,' whereby both parties mutually assent to the same thing, evidenced by an offer and its acceptance." *Universal Atl. Sys., Inc. v. Honeywell Int'l, Inc.*, 388 F. Supp. 3d 417, 428 (E.D. Pa. 2019) (some internal quotations omitted) (quoting *Mountain Props., Inc. v. Tyler Hill Realty Corp.*, 767 A.2d 1096, 1101 (Pa. Super. Ct. 2001)); *see also Lombardo v. Gasparini Excavating Co.*, 123 A.2d 663, 666 (Pa. 1956) ("[I]n order for there to be an enforceable contract, the nature and extent of its obligation must be certain; the parties themselves must agree upon the material and necessary details of the

bargain."). The parties must agree on the material terms, and "the agreed upon terms must provide a reasonably certain basis upon which the court can grant a proper remedy." *Porreco v. Maleno Devs., Inc.*, 761 A.2d 629, 632–33 (Pa. Commw. Ct. 2000).

Plaintiff cannot show that he and Drexel mutually agreed that the Spring 2020 Quarter would be held in person, in exchange for Plaintiff's payment of tuition and fees. That is because Plaintiff concedes that Drexel announced well before the Spring 2020 Quarter began that the term would be held entirely remotely. While Plaintiff alleges that he "was forced to take his classes remotely," Am. Compl., ECF 13, ¶ 17, and that he "paid tuition and fees for an in-person educational experience during the Spring 2020 term," *id.* ¶ 18, the undisputed evidence proves otherwise. Plaintiff admits that on "March 16, 2020, Drexel announced that the entire spring term would be taught remotely," and that when the Spring 2020 Quarter began "on April 6, 2020, . . . only remote instruction would be offered," *id*. ¶ 49; *see also* Seward Decl., Ex. 7. No evidence supports Plaintiff's conclusory and untenable allegation that he believed the Spring 2020 Quarter would be held in person and he offers no explanation for how he could have believed that in the face of Drexel's acknowledged announcement to the contrary, or how such a subjective belief could be reasonable. *See Longenecker-Wells*, 658 F. App'x at 662 ("Though intent can be gleaned from the parties' ordinary course of dealing[s], naked assertions devoid of further factual enhancement fail to state an actionable claim." (alteration in original) (quotation marks omitted)).

But even crediting Plaintiff's ludicrously implausible suggestion that he thought the term would be in person, it is clear as day that Drexel never offered, let alone mutually assented, to provide in-person education for the Spring 2020 Quarter. Mutual assent to an implied contract may be manifested through the parties' conduct, but the record makes abundantly clear that neither Plaintiff nor Drexel "acted as if they were bound to follow through with the purported terms of [an] agreement" to provide in-person instruction during the Spring 2020 Quarter. *Universal Atl. Sys.*, 388 F. Supp. 3d at 430. The facts show that Drexel made clear weeks before the Spring 2020 Quarter began that it would not hold in-person instruction, and that it did not do so. And Plaintiff

was aware of this. It is not as though he showed up in West Philadelphia on April 6, 2020, shocked to find Drexel's campus deserted.

Plaintiff alleges that "the shift to exclusive remote online instruction occurred after students had already registered for courses and made the necessary financial obligations to pay the associated tuition and fees." Am. Compl., ECF 13, ¶ 53.  But the evidence again proves otherwise: Plaintiff's loans, scholarships, and grants were disbursed to Drexel on March 28 and 30, 2020, nearly two weeks *after* Drexel announced that the Spring 2020 Quarter would be remote. *See* Seward Decl., Ex. 14.  Moreover, regardless of the precise timing of Plaintiff's disbursements, the actual written agreement Plaintiff signed—the SFRA—makes clear that he was not required to pay for the term if he did not wish to do so.  *See* Seward Decl., Ex. 12.  He also could have sought a refund of the entire amount under the Refund Policy, under which he was entitled to withdraw for a 100% refund of both tuition and fees at any time through the first week of classes, regardless of when he paid.[27]  There is no evidence—none—that Plaintiff sought to do so, nor does he allege otherwise.

And there is no need for an "implied" contract to address Plaintiff's right to a refund because the actual written, signed contract between Plaintiff and Drexel—the SFRA—addresses the circumstances under which he is entitled to a refund.  The SFRA and the refund policy provided him with a contractual right to a refund if he chose not to attend the quarter.  The policy even gave him the opportunity to try the quarter for a week and still withdraw for a 100% refund.  The written SFRA and refund policy do *not* give him the right to attend the quarter in its entirety and then seek a refund years later after using the credits he received to earn his Bachelor of Science degree in Mechanical Engineering.

The undisputed evidence shows that Plaintiff knew weeks in advance of the commencement of the Spring 2020 Quarter that it would be remote.  Following that announcement, he  paid tuition, Seward Decl., Ex. 14, confirmed his attendance, Seward Decl., Ex. 1, 2, and he attended

---

[27] *See* Seward Decl., Ex. 11; *Refund Policies and Procedures*, Drexel University, https://drexel.edu/drexelcentral/billing/refunds/policies/ (last visited Jan. 12, 2024).

and completed classes rather than seek the refund offered under the SFRA.  Plaintiff got what he expected, and he got what he paid for.  He is not entitled to a refund.

### 2.    No Reasonable Jury Could Find that Drexel Promised, at the Time Plaintiff First Enrolled, to Provide In-Person Instruction in Perpetuity

Plaintiff tries to avoid the obvious defects in his claim by suggesting that Drexel's implied promise to provide in-person education took effect at the time he first became a student at Drexel, rather than at the beginning of the Spring 2020 Quarter.  This flawed theory suggests that Drexel undertook an unbreakable commitment to provide in-person instruction throughout the entirety of Plaintiff's enrollment at Drexel, regardless of circumstance (such as a worldwide pandemic). *See, e.g.*, Am. Compl., ECF 13, ¶ 8 (asserting that the "student-University contract [was formed] over the course of multiple transactions, offers, and exchanges—from recruitment, to application, acceptance, admission, enrollment, registration, and payment").  This is silly.  No school would commit never to make changes to its curriculum or the manner it provides instruction for the four or more years a student is enrolled at the institution.  Colleges and universities are constantly re-quired to adapt to changing circumstances, whether there are changes to accreditation standards, new rules of law, new or different market demands, natural disasters, or the like.  Most schools also routinely increase tuition on a yearly basis.  No school would ever agree to make a four (or more) year promise and lock itself into commitments that cannot be changed on a term-by-term basis.

Not only does Plaintiff's suggestion fly in the face of common sense, but it also has no grounding in the evidence or law and fails for at least three reasons.

***First***, the SFRAs plaintiff signed each quarter make clear that his obligation to pay tuition and Drexel's obligation to provide classes was on a ***quarter-by-quarter*** basis.  Each SFRA covers a specific quarter. *See generally* Seward Decl., Ex. 13.  Plaintiff could decide to attend that quarter in exchange for payment of tuition, or not attend.  And even after registering for classes, Plaintiff could change his mind so long as he dropped his courses by the end of the first week of the term.

-12-

*See* Seward Decl., Ex. 11.  Thus, the clear and unambiguous terms of the documents Plaintiff signed show that his obligations to the University and its obligations to him are renewed on a quarterly basis.

The Amended Complaint concedes as much.  Plaintiff acknowledges, for example, that "[t]o enroll in classes, Drexel students are required to pay tuition and some form of mandatory fees," Am. Compl., ECF 13, ¶ 27, and that undergraduate tuition and fees are assessed and paid on a per-quarter basis, *see* Am. Compl., ECF 13, ¶ 33.  Plaintiff also concedes that students make enrollment decisions quarter-by-quarter: Plaintiff alleges that Drexel's course catalog provided information about whether courses were to be held online or in-person, and "[t]herefore, when enrolling in classes, Drexel students made informed choices about whether to spend their tuition dollars on in-person, 'Face to Face', or online modes of course delivery."  Am. Compl., ECF 13, ¶ 25; *see also id.* ¶ 45 ("When enrolling in classes for Spring 2020, Plaintiff and members of the Class chose to enroll in classes offered in-person, with face-to-face instruction to obtain the benefits outlined above."). And, the bargain that Plaintiff claims existed consisted of his payment of tuition and fees and enrollment in courses for the Spring 2020 Quarter in exchange for in-person instruction during that quarter.  *See, e.g.*, Am. Compl., ECF 13, ¶ 44 ("Plaintiff and members of the Class paid their tuition in the Spring 2020 term to enjoy . . . in-person education for the entire Spring 2020 term."); *id.* ¶¶ 46–47 (Plaintiff was "required to pay a mandatory fee . . . for the Spring 2020 term," which he allegedly paid so he "could benefit from on-campus services and facilities offered by Drexel to its students"); *id.* ¶ 48 ("Despite Plaintiff and Class Members paying the Spring 2020 term tuition and Mandatory Fee to attend Drexel for an in-person and on-campus educational experience, Drexel failed to provide the promised in-person education for the duration of the entire term, instead providing only online instruction during the Spring 2020 term.").

As discussed above, the undisputed evidence refutes Plaintiff's claim that the parties agreed that the Spring 2020 Quarter would include in-person instruction. But the point here is that, meritless or not, the substance of Plaintiff's claim is grounded on a quarter-by-quarter contractual relationship.

***Second***, Plaintiff's argument fails as a matter of law because he does not allege any other material or essential terms of this supposed agreement. Plaintiff does not claim that he undertook any mutual obligation in exchange for Drexel promising, at the time of his initial enrollment, to provide in-person instruction indefinitely. He does not allege, and there is no evidence to support, that he was contractually obligated to re-enroll at Drexel every quarter until graduating, that he was restricted from transferring to another institution or from taking a quarter off, that he had to maintain a minimum GPA or graduate by a particular date, or that he paid tuition and fees for his entire degree up front. Even if Plaintiff had adequately alleged that Drexel promised, in perpetuity and regardless of future circumstances, to provide Plaintiff in-person instruction for his entire tenure as a Drexel student, that single contractual term "cannot be construed as an implied-in-fact contract because [a] term alone, in the absence of manifested agreement as to any other material term of the contract . . . is insufficient to create an enforceable contract for services." *Universal Atl. Sys.*, 388 F. Supp. 3d at 430 (alterations and omission in original) (quotation marks omitted); *see also Porreco*, 761 A.2d at 632–33 ("[T]he minds of the parties must meet upon *all* of the material terms . . . of the agreement in order . . . to be enforceable.") (emphasis added); *Lombardo*, 123 A.2d at 666 ("[I]n order for there to be an enforceable contract, the nature and extent of its obligation must be certain; the parties themselves must agree upon the material and necessary details of the bargain.").

***Third***, assuming *arguendo* that Plaintiff and Drexel entered into an open-ended contract for Drexel to provide in-person instruction that commenced at the beginning of Plaintiff's undergraduate career and ended at some undefined time in the future, that contract became impossible to perform on March 19, 2020, when Governor Wolf issued his stay-at-home order. Thus, Drexel was excused from performing any such contract. *See Burkus v. Henshall*, 126 A.2d 722, 725 (Pa. 1956) (because all contracts contain an "implied condition that . . . no law or governmental regulation will be enacted rendering continued performance of the contract unlawful," a party's duty to perform is discharged when "continued performance of a contract is rendered illegal by a subsequent governmental regulation"); *see also Kasemer v. Nat'l Fuel Gas Distrib. Corp.*, 433 A.2d

-14-

851, 851–53 (Pa. 1981) (finding a public utility not liable for breach of contract with consumers where the alleged breach resulted from compliance with orders of Public Utility Commission); *Burt v. Board of Trs. Of Univ. of R.I.*, 84 F.4th 42 (1st Cir. 2023).

Therefore, when Drexel told students that it was pivoting to remote learning, it offered a new contract that it *could* legally perform—remote learning for the Spring 2020 term. Plaintiff had every right to reject that offer with no financial consequences. But he did not reject the offer, he accepted it by paying tuition, not requesting a refund, and earning credits toward his degree.

A recent case involving a quarter-calendar university concluded just that. Once providing in-person instruction became illegal, the court concluded, "even if [the university] had a contractual obligation to provide in-person instruction, Plaintiffs agreed to modify the terms of the contracts or substitute that contractual duty by assenting to new agreements." *Pranger v. Or. State. Univ.*, No. 21-cv-00656, 2023 WL 3381387, at *6 (D. Or. May 8, 2023), *appeal docketed*, No. 23-35393 (9th Cir. June 7, 2023). The court found that the plaintiffs' enrollment in courses, payment of tuition, and completion of courses that were offered remotely signified acceptance of a changed contract. *See id*. And no discovery was needed to establish this obvious fact: the court in *Pranger* rejected the plaintiffs' argument that they needed additional discovery as to whether an implied-in-fact contract exists because, even if there were an implied-in-fact contract, the plaintiffs had assented to the new contract terms. *See id*. at *8 ("[Plaintiffs] clearly could have declined to take classes and could have not paid tuition during any term in which they chose to do so after Defendant announced that all instruction would be remote.").

So too here. Plaintiff knew what he was getting, knew the price and decided to accept what was being offered. He cannot file a lawsuit three years later—after having used the credits Drexel awarded him to earn his degree—expecting to be compensated if he now second-guesses his decision.

### 3. Because Drexel Operates on a Quarter System, Plaintiff's Claims are Materially Different from *Hickey* and Other Cases That Allowed Tuition-Refund Claims to Proceed

Because Drexel is on a quarter system, the Third Circuit's recent decision in *Hickey v. University of Pittsburgh*, 81 F.4th 301 (3d Cir. 2023), does not help the Plaintiff. *Hickey* held that the plaintiffs had plausibly alleged a contractual promise to in-person instruction based on public statements and a history of Temple University and the University of Pittsburgh providing in-person instruction. Unlike Pitt and Temple, which were in the middle of their Spring semesters when the pandemic hit, Drexel had not yet begun its Spring 2020 Quarter. There were no promises made by Drexel—express, implied, or otherwise—that the education to be provided during the Spring 2020 Quarter would be live and in person. To the contrary, Drexel made clear, well **before** the start of its Spring Quarter and well **before** the date by which Plaintiff had to request a full refund, that the Spring 2020 Quarter would be conducted remotely. Far from identifying a "specific undertaking" by Drexel to provide in-person instruction in the Spring 2020 Quarter, *Hickey*, 81 F.4th at 311–12, the "specific undertaking" Drexel repeatedly told students it would make was to provide learning in a remote format for the Spring 2020 Quarter. The parties' mutual understanding that classes in the Spring 2020 Quarter would be held remotely was clear and unambiguous well before the commencement of that quarter and well before the end of the full-refund period.

Drexel is aware of no cases that have found an implied contract for in-person instruction at a school on a quarter system where the students were told before the start of the term that classes would be remote. Indeed, although there are many fewer quarter schools than semester schools in the United States and thus fewer cases considering tuition-refund claims against them, courts generally have dismissed such claims. *See Oyoque v. DePaul Univ.*, 520 F. Supp. 3d 1058, 1066 (N.D. Ill. 2021) (dismissing COVID-19 tuition refund claims against a university operating on a quarter calendar where students failed to allege a specific promise of in-person instruction); *Polley v. Nw. Univ.*, 560 F. Supp. 3d 1197, 1209 (N.D. Ill. 2021) (same). For example, an appellate court in California recently rejected the notion that plaintiffs could recover for the Fall and Spring terms because plaintiffs "were aware these semesters would be conducted either entirely remotely or in

a hybrid format prior to enrolling or paying tuition for those semesters." *Berlanga v. Univ. of S.F.*, No. A165976, 2024 Cal. App. LEXIS 137 at *21 (Cal. Ct. App., Feb. 29, 2024); *see also id.* (rejecting argument that students had to continue education because missing a term would be "disruptive").

Plaintiff relies on *Jones v. Administrators of Tulane Educational Fund* to suggest that this Court should ignore the import of Drexel's refund policy. While the *Jones* court did conclude that Tulane's interpretation of its refund provision was "untenable," 51 F.4th 101, 118 (5th Cir. 2022), Plaintiff ignores two crucial differences. First, Tulane is a semester school, and so like most such institutions (but unlike Drexel), Tulane shifted to online instruction in the middle of a semester, at which point no refund was available under the policy. *See id.* at 107. Second, the plaintiffs in *Jones* had also brought claims related to the summer and fall semesters, which Plaintiff here ignores. *See id.* at 108 n.4. Tulane argued that the plaintiffs could not receive a refund for those semesters because they had knowledge of the online method of instruction prior to the start of those semesters. *See id.* The Fifth Circuit ***did not address*** this argument in its opinion, rather leaving "that question to the district court to review in the first instance." *Id.* Thus, *Jones* and its discussion of refund policies is irrelevant and inapposite because the factual circumstances and timing are entirely different, and the court did not address the factual circumstances present here.

Plaintiff's other cases are equally inapplicable, as they all addressed colleges and universities operating on a semester calendar. *See, e.g.*, *Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 672 (7th Cir. 2023) (reversing a grant of dismissal on COVID-19 tuition refund claims brought by a student at a semester calendar school); *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 887–88 (7th Cir. 2022) (same); *Shaffer v. George Washington Univ.*, 27 F.4th 754, 770 (D.C. Cir. 2022) (same); *Hogan v. S. Methodist Univ.*, 74 F.4th 371, 375 (5th Cir. 2023) (same); *Minjarez-Almeida v. Kan. Bd. Of Regents*, 527 P.3d 931, 947 (Kan. Ct. App. 2023) (same); *Rynasko v. N.Y. Univ.*, 63 F.4th 186, 201 (2d Cir. 2023) (vacating denial of motion for leave to amend complaint where the court concluded a student could plausibly allege a COVID-19 tuition refund claim against a semester-based university).

Plaintiff conveniently ignores the clear distinctions between the facts of this case and those in *Hickey* and the other cases on which he relies in an attempt to bolster his flawed theory of the case. As discussed above, Plaintiff cannot plausibly allege that Drexel agreed to in-person instruction at the start of the Spring 2020 Quarter; rather, he was informed in advance that the quarter would be conducted remotely. With full knowledge of this, Plaintiff, by registering for courses, paying tuition, and taking his classes, accepted the terms of the contract for the Spring Quarter, i.e., that instruction would be provided remotely. He was entitled to a 100% refund through the end of the first week of classes, nearly four weeks after he was on notice that the quarter would be conducted remotely. Plaintiff failed to exercise his right to a refund, and thus accepted the terms Drexel presented.

### B. Plaintiff's Unjust Enrichment Claim (Count Two) Fails as a Matter of Law

To state a claim for unjust enrichment under Pennsylvania law, a plaintiff must allege: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Walter v. Magee-Womens Hosp. of UPMC Health Sys.*, 876 A.2d 400, 407 (Pa. Super. Ct. 2005). "The most important factor to be considered in applying the doctrine is whether the enrichment of the defendant is *unjust*." *Schenck v. K.E. David, Ltd*, 666 A.2d 327, 328 (Pa. Super. Ct. 1995). Plaintiff's unjust enrichment claim fails for at least two reasons.

***First***, both parties agree that this case should be analyzed under contract principles. Here, there is a written contract—the SFRA—which precludes an unjust enrichment claim. Although a plaintiff generally may plead unjust enrichment as an alternative to a breach of contract claim, it cannot do so when the unjust enrichment claim would contradict a specific agreement. *See STI Oilfield Servs. v. Access Midstream Partners*, No. 13-CV-02923, 2014 WL 4716618 at *6 (M.D. Pa. Sept. 22, 2014) (noting that a plaintiff cannot plead unjust enrichment in alternative where it contradicts an agreement). Here, Plaintiff signed a contract that specifically acknowledged and

-18-

incorporated Drexel's refund policy, and the Refund Policy facially precludes Plaintiff's claim. Plaintiff cannot bring an unjust enrichment claim that contradicts the actual agreement between the parties.

*Second*, as with Plaintiff's breach of implied contract claim, Plaintiff's concession that Drexel announced well in advance of the Spring 2020 Quarter that instruction would be held remotely dooms his unjust enrichment claims. Plaintiff alleges that he and other students conferred a benefit on Drexel through the payment of tuition and fees, and that Drexel accepted that benefit. *See* Am. Compl., ECF 13, ¶¶ 88–89. He claims that retention of those payments is unjust and inequitable because Drexel did not provide in-person education during the course of a global pandemic, when it was barred from doing so by the government. *See id.* ¶ 94. Yet as Plaintiff acknowledges, and as the evidence shows, he knew of the switch to remote instruction three weeks before the start of the Spring 2020 Quarter. *See id.* ¶ 49. It simply cannot be unjust for Drexel to retain tuition and fees that Plaintiff and other Drexel students paid with full knowledge that the term would be held remotely, especially given that they had the right to a refund through the first week of classes. Plaintiff cannot succeed on a claim of unjust enrichment where he knew exactly what he was getting, and Drexel provided exactly what it offered him. *See, e.g.*, *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 927 (E.D. Pa. 2016) (dismissing quantum meruit claim because "Plaintiff fails to allege how it would be unconscionable for the University to retain the tuition paid for classes that she attended").

## VI.    CONCLUSION

For all of the foregoing reasons, Drexel respectfully requests that this Court grant its Motion for Summary Judgment and enter final judgment in Drexel's favor.

Dated: March 8, 2024                          Respectfully submitted,

/s/ *Michael E. Baughman*
Michael E. Baughman (Pa. 78690)
Christopher R. Healy (Pa. 326965)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215.981.4000

*Attorneys for Defendant Drexel University*

**CERTIFICATE OF SERVICE**

I certify that, on March 8, 2024, pursuant to Local Rule 5.1.2, I filed the foregoing document on all counsel of record through the Court's Electronic Case Filing System.

/s/ *Michael E. Baughman*
Michael E. Baughman