IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA DELLER, individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>DREXEL UNIVERSITY,<br><br>Defendant. | Civil Action No. 2:23-cv-03746 |

**STIPULATION REGARDING PROTOCOL FOR DISCOVERY AND PRODUCTION
OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS
("STIPULATION")**

The Parties to the above-captioned action HEREBY STIPULATE AND AGREE, by and through their undersigned counsel, that the following specifications shall govern discovery of all documents, electronically stored information ("ESI"), and any other materials and information produced by the Parties in discovery in the above-captioned action.

**I.    DEFINITIONS**

    A.    "Custodial Data Source" means any data source in or on which a custodian may store potentially relevant Documents, ESI, or hard copy documents, whether or not created or generated by the custodian, including but not limited to personal computers, laptops, email, mobile devices, shared network servers, shared or individual network folders, cloud storage systems, or structured data systems.

    B.    "Document" shall have the same meaning and scope as it has in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure.

C. "ESI" is an acronym for "electronically stored information," which shall have the same meaning and scope as it has in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure.

D. "Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system. Metadata is a type of ESI.

E. "Native File" and "Native Format" mean ESI in the electronic format of the application in which such ESI is created, viewed, and/or modified in the ordinary course of business. A Native File is a type of ESI.

F. "Non-Custodial Data Source" means any data source that is not kept or maintained by any particular custodian but which may contain potentially relevant Documents or ESI, including data sources under the control of a Producing Party or available to a Producing Party on demand, and shared storage systems that may contain potentially relevant information.

G. The terms "Party" or "Parties" mean Plaintiff or Defendant, or either of them, and the term "Third Party" means any person or entity served with a subpoena under Rule 45 of the Federal Rules of Civil Procedure. The protocol set forth herein shall govern document productions by the Parties, and, where applicable, Third Parties. In the event a class is certified in this case, any members of the class shall be considered plaintiffs and included within the definition of "Party" or "Parties."

    H.    "Producing Party" means any Party or Third Party that produces Documents and/or ESI under this ESI Protocol (or is subject to a request for production).

    I.    "Receiving Party" means any Party or Third Party that receives Documents and/or ESI produced in this litigation.

    J.    "Requesting Party" means any Party that serves a request for production of Documents on another Party or Third Party.

**II.    GENERAL PROTOCOL**

    A.    The Parties shall take reasonable steps to comply with the procedures set forth in this Stipulation.

    B.    This Stipulation is intended to streamline production to promote a just, speedy, and inexpensive determination of this action under Rule 1 of the Federal Rules of Civil Procedure.

    C.    To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs. The terms of this Stipulation shall be construed so as to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules, and Orders of this Court.

    D.    Except as specifically limited herein, this Stipulation governs the production of discoverable documents by the Parties in the litigation.

    E.    Subject to the Parties' objections and responses to requests for production of documents and interrogatories, and the Confidentiality Agreement and Protective Order ("Confidentiality Agreement"), all documents that are responsive to discovery requests and not designated as "privileged" shall be produced in the manner provided herein. Nothing in this Stipulation shall be interpreted to require

disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Additionally, nothing in this Stipulation shall be deemed to waive or limit any Party's right to object to the production of certain electronically stored information, or to move for an appropriate order under the Federal Rules of Civil Procedure that an information source is not reasonably accessible because of undue burden or cost. The Parties agree to follow the procedures set forth in the Confidentiality Agreement with regard to documents falling within the scope and definitions of the Confidentiality Agreement.

F. The Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this Stipulation. If compliance with this Stipulation imposes an undue burden with respect to any protocol or information source, the Parties shall promptly confer in an effort to resolve the issue.

G. Consistent with their obligations under the Court's Policies and Procedures, the Local Rules, and the Federal Rules of Civil Procedure, the Parties will attempt to resolve disputes regarding the protocols set forth herein before filing a motion with the Court or otherwise seeking relief. If the Parties are unable to resolve the dispute after good faith effort, the Parties may seek Court intervention under the Court's procedures.

## III. PRODUCTION FORMAT – HARD COPY DOCUMENTS

If reasonably possible, HARD COPY documents should be scanned as .PDF format or single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "PAGES" and "CUSTODIAN." The

documents should be logically unitized (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. If an original document contains relevant information in color necessary to understand the meaning or content of the document, the document should be produced as single-page, 300 DPI with a minimum quality level of 75, 24-bit, color JPG images. If a Producing Party OCR's the document for its own benefit, OCR should also be provided. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

IV.     **PRODUCTION FORMAT – ELECTRONICALLY STORED INFORMATION**

Electronically stored information (ESI) should be produced as single-page, Group IV, 300 DPI TIFF images. Source code, audio, video, and spreadsheet-type files (including but not limited to Microsoft Excel and CSV files) should be produced in Native Format as described below. PowerPoint or presentation files should be produced as original native files along with TIFF images as described below.

All ESI should be produced with a delimited, database load file that contains one row for each document produced and shall include the document information and metadata fields listed in **Appendix A**, attached hereto, to the extent it is available. The format of the file shall be industry standard Concordance DAT file format or a delimited text file that uses ASCII character delimiters as follows: Field Delimiter = ""ASCII (020), Text Quote = "þ" ASCII (254), Multi-Entry = ";" ASCII (059). To the extent that metadata does not exist, is not reasonably accessible or available for any documents produced or would be burdensome to provide, nothing in this Stipulation shall require any Party to extract, capture, collect or produce such data.

An image identification file shall be provided containing a row of information for every image included in the production. The format of the file should be industry standard IPRO format

(LFP), Concordance Image format (OPT) or other delimited file format using common ASCII (American Standard Code for Information Interchange) characters for field identification that includes one row of information for each image with fields for image Bates number, relative path to the image, image filename, page number, and document start identifier to designate the first page of a document.

TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFF images of e-mail messages should include the BCC line. PowerPoint documents should be processed with hidden slides and all speaker notes unhidden and should be processed to show both the slide and the speaker's notes on the TIFF/JPG image. Color originals may be produced in B&W TIFF format, but either party may request, by bates number(s), a replacement set of color images if the Requesting Party shows that the absence of color obscures information in the original. Categorical or wholesale replacement requests are deemed invalid.

If a document is produced in Native Format only, a single-page bates-stamped TIFF image slip-sheet containing the confidentiality designation and text stating the document has been produced in Native Format should also be provided. If documents requested in Native Format require redactions, the producing Party shall redact and produce the document in native format, using a native redaction tool (*e.g.*, Relativity Redact; Redactable) while ensuring that proper formatting and usability are maintained. Original native files need not be produced for documents produced with redacted images, regardless of original native file format. Each Native File should be named according to the bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field. If either party believes that Native Files should be produced for a specific document or class of documents not required to be

produced in Native Format under this paragraph, or if records do not easily conform to native or TIFF format (*i.e.*, structured data), the parties should meet and confer in good faith.

## V.    PRODUCTION FORMAT – SOCIAL MEDIA

ESI from social media websites (*e.g.*, LinkedIn, Facebook, Twitter) may be produced by capturing information through "screen shots" or "screen captures" and converting the same into images along with corresponding extracted text or OCR, unless the Parties agree to perform bulk exports of accounts, such as by exporting a profile from LinkedIn or downloading a copy of an individual's Facebook data or archive.

## VI.   PRODUCTION FORMAT – MEDIA

Documents shall be exchanged on DVD-ROMs, CD-ROMs, USB drives, portable hard drives or through secure file transfer protocols (*e.g.*, FTP) or similar secure electronic transmission. Production media shall be labeled with the Volume Number along with the bates range(s) of the materials; where this is not practicable, the volume and bates range may be provided by accompanying letter. If a Producing Party encrypts or "locks" the production, the Producing Party shall send, under separate cover, an explanation of how to decrypt the files.

## VII.  PROCESSING AND OTHER SPECIFICATIONS

A.  <u>Bates Numbering and Confidentiality Designations</u>: Each page of a produced image shall have a legible bates number that includes an alpha prefix with a fixed number, *i.e.*, ABC00000001, electronically "burned" onto the image. Each image page or Native File shall be assigned a bates number that: (1) is unique across the entire document production; (2) maintains a constant length across the entire document production; (3) contains no embedded spaces; (4) is sequential within a given document; (5) does not obscure any part of the underlying image; and (6) is oriented, to the extent possible, in the same manner as the majority of the text on

the page. No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

B. ESI Date and Time Processing: Each Party's ESI should be processed using a consistent time zone for all data. The Party shall share the time zone selected for processing of its data with the other Party.

C. Global or Horizontal Deduplication: Removal of duplicate documents should only be done for exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. When applying global deduplication, metadata identifying all custodians in possession of each document removed as a duplicate must be provided in the DUPE CUSTODIAN metadata field, subject to any exceptions provided in this Stipulation.

D. Email Thread Suppression: A Producing Party may de-duplicate e-mails to eliminate earlier or incomplete chains of emails and produce only the most inclusive iteration of an email chain. Following production of most inclusive email threads, and for good cause shown, a Requesting Party may make reasonable requests, with respect to specifically identified most-inclusive email threads, for metadata associated with individual, prior or lesser-included emails within the identified most inclusive email threads. The Producing Party shall cooperate reasonably in responding to any such requests.

E. Embedded Objects: Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word,

8

PowerPoint, Project, Outlook, Access, and .PDF. Subject to claims of privilege and/or other immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded unless otherwise subject to an exception provided in this Stipulation.

F. <u>Compressed Files</u>: Compressed file types (*i.e.*, .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a .zip within a .zip is decompressed into the lowest possible compression resulting in individual files.

G. <u>Redaction</u>: A Producing Party may use redactions to protect privileged or work product protected materials in Documents that are not otherwise subject to privilege or work product protections. Redactions may also be used to protect Personally Identifiable Information as set forth in the Confidentiality Agreement in this matter. OCR generated text should be used for ESI if the document has been redacted.

H. <u>One text file per document which contains searchable text for the document shall be provided for all ESI and scanned paper documents. Extracted full text shall be provided for ESI, and OCR text shall be provided for scanned paper. OCR generated text should only be used for ESI if extracted text is not available or if the document has been redacted. Text files shall be named with the beginning Bates number of the corresponding document and a path to the text file within the production should be provided in the data load file;</u>

I. <u>No Designation of Discovery Requests</u>: Production of hard copy documents and ESI in the reasonably usable form set out in this Stipulation need not include reference to the requests to which a document or ESI may be responsive.

## VIII. IDENTIFICATION AND COLLECTION OF DOCUMENTS

Except as otherwise agreed upon in this Stipulation, the Parties will meet and confer in an effort to agree upon the following:

1. A list of the most likely custodians of relevant ESI and/or hard copy documents;

2. A search methodology to be applied, including but not limited to search terms and date restrictions; and

3. The location of relevant Custodial and Non-Custodial Data Sources.

The fact that a document is hit or captured by the application of any agreed upon search term does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation. Determinations of responsiveness and privilege shall be made by the Producing Party.

## IX. PRESERVATION

A. Each Party has an obligation to take reasonable and proportional steps to preserve discoverable information in its possession, custody, or control.

B. The Parties agree that discoverable information should be preserved while this litigation is pending.

C. The Parties agree to negotiate in good faith regarding requests for production of documents to ensure discovery is relevant to any Party's claim or defense and proportional to the needs of the case. The Parties agree that the following ESI is not reasonably accessible:

1. Data maintained or duplicated in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system

mirrors or shadows, if such data are routinely purged, overwritten or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy.

   2. Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics and "unallocated" space on hard drives, provided that no Party or agent of a Party deleted, removed, or damaged the integrity of such data to prevent its discovery.

   3. Data stored in random access memory ("RAM"), temporary files, or other ephemeral data that is difficult to preserve without disabling operating systems.

   4. On-line access data such as temporary internet files, history, cache files, cookies, and the like, wherever located.

   5. Data stored on photocopiers, scanners and fax machines.

   6. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

   7. Legacy data or data remaining from systems no longer in use that are unintelligible on systems in use.

   8. Electronic data (*e.g.*, email, calendars, contact data, and notes) that exist only on a mobile device (*e.g.*, iPhone, iPad, Android, and Blackberry devices), provided that such electronic data is routinely saved elsewhere (*e.g.*, on a server, laptop, desktop computer, or "cloud" storage).

## X. PRIVILEGE AND PRIVILEGE LOGS

  A. The Parties agree that they need not exchange the text of litigation hold/retention instructions issued for this litigation.

  B. The Parties agree that the following privileged communications or documents need not be logged: (a) communications or documents that post-date the filing of the Complaint and relate to the prosecution or defense of this litigation;

   (b) communications or documents to or from outside legal counsel for the Parties in this case; and (c) communications or documents relating to activities undertaken in compliance with the duty to preserve information (including but not limited to litigation hold letters) which are protected from disclosure under Rule 26(b)(3)(A) and (B) of the Federal Rules of Civil Procedure.

C.  To avoid unnecessary expense and burden, the Parties agree that, for documents redacted or withheld from production on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, the Producing Party will prepare a summary log containing, for each document claimed as privileged (except those exempted above), in accordance with the Court's Policies and Procedures, a description of the document sufficient for the opposing party to determine the basis for the assertion of privilege, and an export of the metadata fields listed below to the extent such information has not been redacted to preserve privilege. The export should include the following information for each document:

- LogID
- Date
- Author/From
- To
- CC
- BCC
- Document Type
- Filename/Subject
- Privilege Description
- Attorney/Law Firm
- Privilege Assertion
- BegBates
- EndBates.

D.  If the Requesting Party requires further information, it shall explain in writing the need for such information and identify, by bates number or other unique identifier,

each document for which it seeks this information. Within fourteen (14) days of such a request, the Producing Party must either (i) provide the requested information; or (ii) challenge the request. If the Producing Party challenges a request for further information, the Parties shall meet and confer to seek a mutually acceptable solution.

XI. **PRODUCTION OF PRIVILEGED MATERIAL**

　　A.　<u>Procedure</u>. The Parties agree to follow the procedures described in the Confidentiality Agreement with regard to the inadvertent production of privileged material.

　　B.　<u>Attorney's Ethical Responsibilities</u>. Nothing in this Stipulation overrides any attorney's ethical responsibility to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the Disclosing Party that such materials have been produced.

　　C.　<u>*In camera* Review</u>. Nothing in this Order limits the right of any Party to petition the Court for *in camera* review of Privileged Information.

　　D.　<u>Voluntary and Subject Matter Waiver</u>. This Order does not preclude a Party from voluntarily waiving the attorney-client privilege or work product protection. The provisions of Federal Rule 502(a) apply when the Disclosing Party uses or indicates that it may use information produced under this Order to support a claim or defense.

　　E.　<u>Proportionality</u>. Nothing herein is intended to limit a Party's proportionality and burden arguments specifically related to the costs to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness, and/or segregation of privileged and/or protected information before production.

XII. **THIRD-PARTY DOCUMENTS**

A Party that issues a Third-Party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena and state that the Parties to the litigation have requested that Third Parties produce documents in accordance with the specifications herein. The Issuing Party shall produce any documents obtained in response to a Third-Party subpoena to opposing Parties.

### XIII. NO EFFECT ON RELEVANCE, DISCOVERABILITY, OR ADMISSIBILITY

This Stipulation does not address, limit, or determine the relevance, discoverability, or admissibility of ESI. The Parties do not waive the right to seek any discovery, and the Parties do not waive any objections to specific discovery requests. All objections to the admissibility of any document or data are preserved.

### XIV. CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER

Nothing in this Stipulation shall be deemed to limit, modify, or override any provision of the Confidentiality Agreement.

### XV. MODIFICATION

This Stipulation may be modified by a stipulation of the Parties or by the Court for good cause shown.

**SO STIPULATED AND AGREED:**

Dated: February 14, 2025

*/s/ Michael A. Tompkins*
Michael A. Tompkins
Anthony Alesandro
LEEDS BROWN LAW, P.C.
1 Old County Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
mtompkins@leedsbrownlaw.com
aalesandro@leedsbrownlaw.com

Gary F. Lynch (PA 56887)
Nicholas A. Colella (PA 332699)
LYNCH CARPENTER LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(610) 322-9243
gary@lcllp.com
nickc@lcllp.com

*Attorneys for Plaintiff Joshua Deller*

*/s/ Michael E. Baughman*
Michael E. Baughman (PA 78690)
Christopher R. Healy (PA 326965)
Sean M. Craig (PA 331672)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103
215.981.4000
Michael.Baughman@troutman.com
Christopher.Healy@troutman.com
Sean.Craig@troutman.com

*Attorneys for Defendant Drexel University*

**SO ORDERED:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

Dated: February 18, 2025

## APPENDIX A: METADATA FIELDS

| Field Name | Example/Format | Description |
|---|---|---|
| BEGBATES | ABC00000001 (Unique ID) | The Document ID Number associated with the first page of the document. |
| ENDBATES | ABC00000003 (Unique ID) | The Document ID Number associated with the last page of the document. |
| BEGATTACH | ABC00000001 (Unique ID Parent-Child Relationships) | The Document ID Number associated with the first page of the parent document. |
| ENDATTACH | ABC00000008 (Unique ID Parent-Child Relationships) | The Document ID Number associated with the last page of the last attachment. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| CUSTODIAN | John Smith | The custodian/source of a document |
| DUPE CUSTODIAN | Tim Jones; Finance Department | The custodian/source from whom documents are de-duplicated on a global basis.. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILESIZE | Numeric | The file size of a document (including imbedded attachments). |
| PAGES | 3 (Numeric) | The number of pages for a document. |
| FILEPATH | i.e., John Smith/E-mail/Inbox | Location of the original document. The source should be the start of the relative path. |
| DEDUPED PATHS | | All File path/folder structure for the original native file as it existed at the time of collection even if removed from production as a duplicate. Should include full path and folder locations of email container files such as PST and NSF and the internal path of the email within those files |
| AUTHOR | jsmith | The author of a document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name or e-mail of the sender of an e-mail. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the recipient(s) of an e-mail. |

| Field Name | Example/Format | Description |
|---|---|---|
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the copyee(s) of an e-mail. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the blind copyee(s) of an e-mail. |
| SUBJECT | | The subject line of the e-mail. |
| DOCTITLE | | The extracted document title of a document. |
| Date_Sent | mm/dd/yyyy | Date message sent |
| Time_Sent | hh:mm:ss | Time message sent |
| CREATEDDATE | MM/DD/YYYY | The date the document was created.<br><br>*Parties acknowledge that the CREATEDATE field may not actually reflect the date the file was created, due to the ease of change to that field and the technical definition of that field (e.g., the created date and time reflects the date when the file was created in that particular location on the computer or on the other storage device location). |
| CREATETIME | HH:MM | The time the document was created.<br><br>*Parties acknowledge that the CREATETIME field may not actually reflect the time the file was created, due to the ease of change to that field and the technical definition of that field (e.g., the created date and time reflects the time when the file was created in that particular location on the computer or on the other storage device location). |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| CONFIDENTIALITY | | Confidential branding on document |

| Field Name | Example/Format | Description |
|---|---|---|
| HAS REDACTIONS | TRUE/FALSE | Field populates true for redacted docs/false for unredacted documents. |
| MD5HASH (or equivalent) | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| TIMEZONE PROCESSED | PST, CST, EST, CET, etc. | The time zone the document was processed in. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The relative path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text or OCR of the document. There should be a folder on the deliverable containing a separate text file per document. These text files should be named with their corresponding bates numbers.<br><br>If the attachment or e-file does not extract any text, then OCR for the document should be provided (only to the extent the Producing Party OCR's the document for its own benefit). |

\*\* As it relates to the CUSTODIAN metadata field above, the Producing Party reserves the right to produce in multiple fields (*e.g.*, CUSTODIAN + DUPLICATE CUSTODIAN) since the metadata may already be exported and logged as such.

\*\* Same is true with all DATE and TIME Fields. These fields may be provided in separate fields or combined into a single field as long as the required information is produced in the load file.