**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

**JOSHUA DELLER, on behalf of himself and all others similarly situated**,

*Plaintiff,*

v.

**DREXEL UNIVERSITY**,

*Defendant.*

**Case No.  2:23-cv-03746-JDW**

---

## MEMORANDUM

The Parties in this tuition and fees class action seek preliminary approval of a proposed settlement of claims for breach of implied contract and unjust enrichment. After reviewing the facts and the proposed agreement, I will grant the Motion and preliminarily certify the class.

### I.    BACKGROUND

#### A.    Factual Allegations

Drexel University is a private research university that offers its students an on-campus, in-person educational experience in Philadelphia, Pennsylvania. In March 2020, in response to the COVID-19 pandemic, Drexel transitioned from offering an in-person educational experience to providing only remote classes. Drexel cancelled on-campus recreational activities, called off student events, and directed students to refrain from going on campus. As a result, students did not have access to any on-campus education,

services, and amenities for the Spring 2020 term. The students, however, paid the tuition and fees associated with Drexel's in-person educational offering. Drexel did not provide students with any sort of refund for the tuition or fees that they paid for Drexel's on-campus educational experience.

### B.    Procedural History

Joshua Deller filed a class action complaint on September 26, 2023, asserting claims for breach of implied contract and unjust enrichment. Drexel moved for summary judgment on March 8, 2024, arguing in part that it never promised in-person education as it announced the transition to remote education weeks prior to the beginning of the Spring 2020 term. I *sua sponte* issued an order to show cause why I should not decline to exercise jurisdiction under the Class Action Fairness Act's exception for minimal diversity. After the parties completed briefing, I issued an order overruling the order to show cause and denying Drexel's motion for summary judgment. The parties commenced discovery.

After exchanging information exposing the strengths and weaknesses of their claims, the Parties participated in a full-day mediation session with Hon. Thomas J. Rueter (Ret.) of JAMS in Philadelphia on June 22, 2025. Though the Parties did not reach an agreement that day, they continued to negotiate. Nearly five months after the initial mediation session, the Parties reached a settlement in principle with the help of Judge Rueter on November 18, 2025.

### C.    The Settlement

The proposed settlement seeks to certify a settlement class consisting of "[a]ll enrolled students at Drexel University during the Spring 2020 term who paid any Tuition and/or Fees for that term, or who were credited with having paid the same for the Spring 2020 Term." (ECF No. 45-3 at 8.) The class definition excludes any person who (1) was enrolled solely in online classes through Drexel University Online, (2) whose tuition and fees were fully funded by Drexel, or (3) who properly executes and files a timely opt-out request to be excluded from the Settlement Class. The Parties estimate that there are about 16,576 individuals in the Settlement Class.

Pursuant to the terms of the Settlement, Drexel will pay a Settlement Amount of $2,200,000 into an escrow account with the Settlement Administrator. The Settlement Administrator will make deductions from the Settlement Amount for court-approved attorneys' fees and reasonable litigation costs, fees and expenses for the Settlement Administrator, and a court-approved Case Contribution Award to Mr. Deller in recognition of the risks and benefits of his participation and the services he performed. After all applicable fees, expenses, and awards are deducted, the remaining funds will be distributed equally to each Settlement Class Member. To the extent a potential Settlement Class Member properly requests to be excluded from the Settlement Class, the amount that would have been distributed to that member will instead be distributed equally to the remaining Settlement Class Members.

In exchange, the Settlement Class Members will release Drexel from liability for any claims that Class Members did bring or could have brought against it for harms related to Drexel's transition to or provision of remote education with respect to the COVID-19 pandemic.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(e), the settlement of a class action lawsuit requires court approval, which may issue only "on finding that [the settlement] is fair, reasonable, and adequate." Review of a proposed Rule 23 class settlement typically proceeds in two steps: (1) a preliminary approval and (2) a subsequent fairness hearing. *See In re Nat'l Football League Players' Concussion Inj. Litig.*, 961 F. Supp. 2d 708, 713–14 (E.D. Pa. 2014). Preliminary approval of a proposed class action settlement is left to the discretion of the trial court. *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998). At this stage, "[t]he fair, reasonable[,] and adequate standard is lowered, and the court is required to determine whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies ... ." *Nat'l Football League,* 961 F. Supp. 2d at 714 (quotation omitted). Nevertheless, "preliminary approval is not simply a judicial 'rubber stamp' of the parties' agreement." *Id.* Rather, it is "based on an examination of whether the proposed settlement is 'likely' to be approved under Rule 23(e)(2)." *Wood v. Saroj & Manju Invs. Philadelphia*

4

*LLC*, No. CV 19-2820-KSM, 2020 WL 7711409, at *10 (E.D. Pa. Dec. 28, 2020) (citing Fed. R. Civ. P. 23(e)(1)(B)(i)).

Where settlement precedes class certification, a court may preliminarily certify the class for purposes of providing notice. *See In re Nat'l Football League Players Concussion Inj. Litig.*, 775 F.3d 570, 581–82 (3d Cir. 2014). Certification at this stage is not final. *See In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 476 (E.D. Pa. 2010). "Final certification *vel non* of the class is determined by the court at the same time as the court rules on whether the final settlement agreement is to be approved." *Id.*

## III.   DISCUSSION

### A.   Class Certification

To succeed on a class certification motion, a plaintiff must satisfy all four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *See Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 183 (3d Cir. 2001). Rule 23(a) requires a showing of: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. *See* Fed. R. Civ. P. 23(a). If a plaintiff satisfies these four requirements, he must meet at least one subsection of Rule 23(b). In this case, Mr. Deller seeks certification pursuant to Rule 23(b)(3). Rule 23(b)(3) contains two explicit requirements: predominance and superiority. *See* Fed. R. Civ. P. 23(b)(3). As part of a preliminary approval motion, courts can conduct a "less rigorous analysis" than the final approval stage requires. *In re: Amtrak Train Derailment In Philadelphia, Pa.*, No. 15-MD-2654, 2016 WL 1359725, at * 4 (E.D. Pa. Apr. 6, 2016).

### 1.    Rule 23(a) factors

#### a.    Numerosity

To satisfy the numerosity requirement, a plaintiff must show that the proposed class is so numerous that joinder of all members is impracticable. This generally requires more than 40 class members. *See In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249–50 (3d Cir. 2016). With approximately 16,576 affected individuals, Mr. Deller has shown that joinder is not practicable.

#### b.    Commonality

The commonality requirement requires a plaintiff to demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not require the perfect identity of questions of law or fact among all class members. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015). Instead, a plaintiff seeking class certification must demonstrate that his claims "depend upon a common contention," the resolution of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). There can be legal and factual differences among the class members if the defendant subjected them all to the same harmful conduct. The commonality bar is not a high one. *See Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013). "[F]or purposes of Rule 23(a)(2), even a single common question will do." *Wal-Mart*, 564 U.S. at 359 (cleaned up).

Mr. Deller has cleared this low bar. Were the class members to proceed as individual plaintiffs, each would have to demonstrate (1) that Drexel engaged in the conduct alleged; (2) there is a difference in the value between online distance learning and live in-person instruction; (3) Drexel breached its contracts with the class members by retaining tuition and fees without providing the services the tuition and fees were intended to cover; (4) whether class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and (5) the amount and nature of relief to be awarded.

### c.    Typicality

The typicality factor aids a court in determining whether "maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 597–98 (3d. Cir. 2012) (citation omitted). A class can meet this requirement when the representatives' claims "arise from the same alleged wrongful conduct" as do the class's claims. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004). To determine whether a named plaintiff is so different as to prevent a finding of typicality, a court must address three distinct concerns: "(1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to

become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class." *Marcus*, 687 F.3d at 598. The Third Circuit has set a "low threshold" for typicality, such that even "relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Nat'l Football League*, 821 F.3d at 428 (quotations omitted).

Mr. Deller satisfies the typicality requirement. He was not issued a refund for the tuition or fees that he paid for Drexel's on-campus educational experience after Drexel switched to offering only remote classes – an identical harm to all class members. Mr. Deller's interests are aligned with the class members' interests because all seek state law remedies for the alleged harm resulting from Drexel's refusal to issue a refund.

### d.     Adequacy

This final 23(a) factor considers both the plaintiff's and counsel's adequacy to represent the class. "Whether adequacy has been satisfied 'depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.'" *McDonough v. Toys R Us, Inc.*, 638 F. Supp. 2d 461, 477 (E.D. Pa. 2009) (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)). "The

second factor 'seeks to uncover conflicts of interest between named parties and the class they seek to represent.'" *Id.* (quoting *Warfarin Sodium*, 391 F.3d at 532).

I see nothing to call into question the adequacy of Mr. Deller to represent the class. He is not antagonistic to other class members. Indeed, he seeks to hold Drexel accountable for failing to provide a refund for the tuition and fees associated with in-person education and on-campus access and services that students paid for the Spring 2020 term. He has participated in the case, including attending the mediation with Judge Reuter and providing sworn testimony in connection with the summary judgment phase of this case. (*See, e.g.*, ECF No. 45-5 at 6–7.) I also conclude that his counsel satisfies the adequacy threshold. Class counsel has extensive experience prosecuting class actions, including several similar class action suits related to COVID-19. (*See* ECF No. 45-2 at 5–6; *see also* ECF No. 45-5 at 1–5.)

### 2.    Rule 23(b) factors

#### a.    Predominance

Predominance requires a court to find "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson*

*Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotations omitted). The predominance requirement "does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (alterations accepted and quotations omitted). Nevertheless, "[t]o assess whether predominance is met at the class certification stage, a district court must determine whether the essential elements of the claims brought by the putative class are 'capable of proof at trial through evidence that is common to the class rather than individual to its members.'" *Gonzalez v. Corning*, 885 F.3d 186, 195 (3d Cir. 2018) (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311–12 (3d Cir. 2008)).

Although Mr. Deller brings claims for breach of implied contract and unjust enrichment, all claims share questions of law and fact that predominate. For instance, whether Drexel breached an implied contract or was unjustly enriched by failing to provide Mr. Deller – or other class members – with in-person, on-campus instruction, education services, and use of facilities during the Spring 2020 term, yet retaining the tuition and fees paid for the same are clearly common questions that predominate over individual inquiries. The contractual arrangements between Drexel and its students are substantively the same and the nature of Drexel's alleged breach is the same regardless of the student's academic major, scholarships, or any other ancillary criteria. Accordingly, the predominance inquiry is satisfied.

10

### b.    Superiority

The superiority analysis calls for a determination that a class action is the best method of achieving a "fair and efficient adjudication of the controversy." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 186 (3d Cir. 2001) (quotations omitted). This requires a "balance, in terms of fairness and efficiency, [of] the merits of a class action against those of alternative available methods of adjudication." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 632 (3d Cir. 1996) (quotations omitted). In determining whether a class action is the superior method to adjudicate a controversy, courts should consider: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D). In considering a motion to certify a class for settlement purposes only, a court need not consider the likely difficulties with managing the class through trial. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

As applied to the proposed class, these factors weigh in favor of class litigation. The number of class members, the common interest of class members, and the prevalence of common questions of law and fact make class action a more efficient vehicle for resolving these claims.

11

**B.    Settlement Approval**

**1.    Rule 23(e) factors**

"In evaluating a class action settlement under Rule 23(e), a district court determines whether the settlement is fundamentally fair, reasonable, and adequate." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 592 (3d Cir. 2010). In making this determination, district courts consider whether:

> (A)    the class representatives and class counsel have adequately represented the class;
> (B)    the proposal was negotiated at arm's length;
> (C)    the relief provided for the class is adequate, taking into account:
> > (i)    the costs, risks, and delay of trial and appeal;
> > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv)    any agreement required to be identified under Rule 23(e)(3); and
> (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

**a.    Adequate representation**

This factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018). Plaintiff's counsel spent considerable time and effort on this case, submitted multiple briefs addressing potentially dispositive issues, attended a full-day mediation with Judge Rueter, and continued to negotiate for months following that mediation session. Counsel evaluated the strengths

and weaknesses of Mr. Deller's claims and Drexel's defenses before reaching the proposed settlement agreement. Thus, this factor weighs in favor of preliminary approval.

### b.    Arm's-length negotiation

"The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, Civ. No. 15-2460, 2016 WL 4766079, at *6 (E.D. Pa. Sept. 13, 2016) (cleaned up). Here, the parties agreed to settle this case after a full-day mediation session with Judge Rueter, a respected mediator, and several months of continued negotiations following that mediation session. Indeed, the Parties eventually reached a resolution in accordance with Judge Rueter's proposal and recommendation. This factor weighs in favor of preliminary approval.

### c.    Adequacy of relief

### i.    Costs, risks, and delay of trial

This factor balances the "relief that the settlement is expected to provide to class members" against "the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018). Mr. Deller acknowledges the risks of proceeding with his claims through the course of litigation, noting that he would have to establish that a contract existed for in-person education in the Spring 2020 term despite Drexel giving prior notice of the term being online, obtain class certification, brief further

13

motions for summary judgment, defend expert opinions, and maintain certification through trial. In addition, the strength of the settlement is demonstrated by comparison to the recoveries in other university settlements involving tuition refunds following transitions from in-person to online learning caused by the COVID-19 pandemic. *See, e.g.*, *Staubus v. Univ. of Minn.*, 27-cv-20-8546 (Minn. Dist. Ct.) ($3.25 million settlement with a per student recovery of $59).

### ii.    The proposed method of distributing relief

Under this factor, the court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims … [and] should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018). The proposed settlement agreement seeks to provide individual notice to all class members using email or U.S. mail. A link to the settlement website will also be publicized on Drexel's website at www.drexel.edu. In addition, the settlement automatically distributes relief to each class member.

### iii.    Terms of proposed attorneys' fees

The proposed attorneys' fees for this case are one third of the Settlement Amount. Courts in the Third Circuit have identified contingent fee requests of this magnitude as "squarely within the range of awards found to be reasonable[]." *McIntyre v. RealPage, Inc.*, No. 18-cv-03934, 2023 WL 2643201 at *3, n.5 (E.D. Pa. Mar. 24, 2023) (quotations omitted); *e.g.*, *Williams v. Aramark Sports, LLC*, Civ. No. 10-1044, 2011 WL 4018205, at *10 (E.D. Pa.

14

Sept. 9, 2011). At this stage, this request does not require me to pause. I will examine it more closely at final approval.

### d.      Whether the proposal treats class members equitably relative to each other

The proposed settlement agreement treats all class members equitably by providing all class members with the same convenient means to recover under the settlement agreement and distributing the funds equally among the class members. Ultimately, "[a] district court's principal obligation in approving a plan of allocation is simply to ensure that the fund distribution is fair and reasonable to all participants in the fund." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quotations omitted). Because the proposed settlement treats class members equitably relative to each other, this factor weighs in favor of preliminary approval.

### 2.      The *Girsh*, *Prudential*, **and** *Baby Products* **factors**

The Third Circuit has prescribed factors to evaluate the fairness of a proposed settlement in addition to those established in Rule 23(e)(2). *See In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010) (listing factors from *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998)); *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013). In *Girsh*, the Third Circuit articulated nine factors for courts to consider, some of which were later incorporated into Rule 23 of the Federal Rules of Civil Procedure. *Compare Girsh*, 521 F.2d at 157 *with* Fed. R. Civ. P. 23. The factors that require my analysis

in this case include (a) the complexity and duration of the litigation, (b) the risk of establishing liability, and (c) the range of reasonableness of the settlement in light of the best possible recovery and all the attendant risks of litigation. Under the Third Circuit's rulings in *Prudential* and *Baby Products*, I must also consider (d) whether class or subclass members are accorded the right to opt out of the settlement and (e) the degree of direct benefit to the class.

### a.    The complexity and duration of the litigation

This factor looks at the "anticipated complexity, costs, and time necessary to try [a] case." *Prudential*, 148 F.3d at 318. If this case were to go to trial, Mr. Deller's counsel would still need to overcome several issues, including establishing that a contract existed for in-person education in the Spring 2020 term, obtaining class certification, briefing further motions for summary judgment, and defendant expert opinions. Surmounting such hurdles can be complex and involve the expenditure of a substantial amount of resources. Since settlement avoids such expenditure, I am convinced this factor weighs in favor of the proposed settlement being fair.

### b.    The risk of establishing liability

This factor "survey[s] the possible risks of litigation in order to balance the likelihood of success ... if the case were taken to trial against the benefits of an immediate settlement." *Prudential*, 148 F.3d at 319. In order for Mr. Deller to establish liability, he will need to establish that a contract for an in-person education existed between the students

or that Drexel was unjustly enriched. But that may prove to be too tall a task in light of Drexel's contention that it notified students in advance that classes would be conducted remotely for the Spring 2020 term. If this risk of failing to establish liability were realized, Mr. Deller would recover nothing. I am thus persuaded that this factor weighs in favor of the proposed settlement agreement being fair.

> **c.    The range of reasonableness of the settlement in light of the best possible recovery and the attendant risks of litigation**

These factors "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin Sodium*, 391 F.3d at 538. In other words, they "test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id.* In assessing the value of a case, a lawyer must consider three things: (i) the odds of proving liability; (ii) the likelihood of different amounts of damages; and (iii) the collectability of any award. In this case, the path to liability is far from certain and the amount of damages is uncertain. Other tuition-based cases involving universities switching from in-person to online learning during the COVID-19 pandemic have resulted in similar recoveries for class members. *See, e.g.*, *Staubus*, No. 27-cv-20-8546 (Minn. Dist. Ct.) (settlement providing a per student recovery of $59); *Rocchio v. Rutgers, The State University of New Jersey*, No. MID-L-003039-20 (N.J. Super. Ct.) ($5 million settlement with a per student recovery of $77.48). So, while it does not appear that Mr. Deller and

17

other class members would have issue collecting from Drexel, I am persuaded that this settlement is reasonable, given the risks that the class members face in proving liability and the relative recovery compared to the outcomes of similar cases.

### d. Whether class or subclass members are accorded the right to opt out of the settlement

The proposed notice to class members includes a clear means to opt out of the settlement agreement, providing a 45-day window from the date of notice to make such an election. This, coupled with Rule 23's requirement that notice permit class members to opt out of the settlement, weighs in favor of approval.

### e. The degree of direct benefits provided to the class

Class members are the direct beneficiaries of the proposed settlement. Each class member receives an equal distribution payment by check or instead of a check (at the class member's election) Venmo or PayPal. Also, the settlement fund is non-reversionary, so class members will reap the full benefit of the settlement notwithstanding who cashes the settlement check. This factor weighs in favor of approving the settlement.

### C. Notice

Under Rule 23, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The notice must state, in plain, understandable language, the following information:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from

the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The Parties propose to send a short form notice by email (if available) and direct mail (if email is not available) to every class member. They will then make available on a website a long form notice that contains more detail, and they will provide a form on the website for class members to either participate in or exclude themselves from the settlement. Because the short form notice is the one that class members will receive first, I focus my analysis on that document.

The short form notice satisfies almost all of the requirements set forth in Rule 23. *First*, it describes the nature of the action. The short form notice also explains that it comes from a court as part of settlement and informs the recipient that it is a product of a settlement resulting from Drexel's transition to remote learning in response to the COVID-19 pandemic. *Second*, it defines the class. *Third*, it describes that the claims are for breach of contract and unjust enrichment arising from Drexel's transition to remote learning. *Fourth*, it addresses opt-out options and timing. *Fifth*, and finally, it discloses the binding impact that will come from a failure to opt out. However, the short form notice does not inform the class member that he or she may enter an appearance through an attorney if the member so wishes.

Having concluded that the short form notice does not satisfy Rule 23(c) on its own, I turn to the long form notice,[1] which supplements the short form notice. The long form notice clearly and concisely states in plain, easily understood language that a class member may enter an appearance through an attorney if the member so desires. *See* Fed. R. Civ. P. 23(c)(3). I also think it's important that the long form notice supplements the brevity of the short form notice so that class members can easily gather more information if they want it. Judges in this district have approved similar notice programs. *See, e.g.*, *Corra v. ACTS Ret. Servs., Inc.*, No. CV 22-2917, 2024 WL 22075, at *9 (E.D. Pa. Jan. 2, 2024). Ultimately, I conclude that the notice program satisfies Rule 23 and will provide class members with direct, reasonable notice to give them the opportunity to evaluate their rights in this case.

## IV.   CONCLUSION

I will preliminarily approve the settlement and provisionally certify the class for the purpose of settlement. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

March 19, 2026

---

[1] The Parties submitted an amended long form notice on March 18, 2026. (*See* ECF No. 48.) That is the long form notice that I have analyzed.